# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-675V**
UNPUBLISHED

| | |
|---|---|
| SEPIDEH POURHASSANI, Petitioner, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent. | Chief Special Master Corcoran<br>Filed: July 22, 2026 |

*Richard Gage, Richard Gage, P.C., Cheyenne, WY, for Petitioner.*

*Jamica Marie Littles, U.S. Department of Justice, Washington, DC, for Respondent.*

**RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[1]

On May 8, 2023, Sepideh Pourhassani filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, which was caused by an influenza ("flu") vaccine administered on October 7, 2020. Petition at 1.

For the reasons set forth below, I find Petitioner has established that she suffered the residual effects of her injury for more than six months, and that she meets the requirements for compensation. And I award Petitioner a lump sum payment of $25,000.00 for pain and suffering.

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Procedural History

On October 21, 2024, Respondent filed his Rule 4(c) Report opposing compensation, arguing that the Vaccine Act's "severity requirement" could not be met. ECF No. 32 at 5-7. The parties were encouraged to attempt settlement, but also informed they could brief their dispute if unsuccessful (and ultimately they did so). February 3, 2025 Docket Entry Order; May 12, 2025 Docket Entry Order. On May 28, 2025, Petitioner filed her Memorandum, requesting $100,000.00 for past pain and suffering, plus $10,000.00 per year for future pain and suffering. Petitioner's Memorandum in Support of Damages ("Pet. Mem.") ECF No. 36. Respondent filed a response on July 7, 2025. Respondent's Brief in Support of Dismissal and Response to Petitioner's Memorandum in Support of Damages ("Resp.") ECF No. 39.

The matter is ripe for resolution.

## II. Factual Background

### A. Medical Records

Petitioner received a flu vaccine in her left shoulder on October 7, 2020. Ex. 6 at 2. Prior to her vaccination, she had a history of migraines and cervicalgia that resulted in pain radiating into her neck and between her shoulder blades in 2017. Ex. 7 at 1-5. However, after being discharged from physical therapy in March 2018, there are no further reports of neck or shoulder symptoms prior to the October 2020 vaccination. *See id.* at 19-20.

On October 30, 2020, Petitioner reported left shoulder pain to Dr. Rohini Ramamoorthy. Ex. 3 at 7-8. She stated at this time that "on 10/7/20 she received a flu shot at her daughter's pediatrician office and the shot hurt. This pain improved, however over the next week she started developing pain involving the entire shoulder." *Id.* at 7. An examination showed tenderness along the rotator cuff, reduced strength, and positive impingement signs. *Id.* at 8.

Petitioner saw orthopedist Dr. Eric Janssen on November 10, 2020. Ex. 8 at 10-11. She stated that on "October 7 she had a flu shot and noticed later that day and the following day that her shoulder started bothering her." *Id.* at 7. An examination showed tenderness in her left rotator cuff, reduced strength, and signs of impingement. *Id.* at 8. She was diagnosed with left shoulder impingement "secondary to flu injection". *Id.* at 11.

Petitioner returned to Dr. Janssen on December 16, 2020, with continued reports of left shoulder pain. Ex. 8 at 8-9. At that time, she reported she was "probably at least 50% better". *Id.*

There is a subsequent treatment gap of nine months, with Petitioner not again seeking medical care for her affected shoulder until September 1, 2021, when she saw orthopedist Dr. Chase Brown. Ex. 8 at 5-9. The record states that Petitioner was back "for reevaluation of left shoulder pain" and that her shoulder continued to bother her "mostly at night" and with certain motions. *Id.* at 5. Petitioner was diagnosed with left shoulder impingement. *Id.* at 7.

Thereafter and through October 26, 2021, Petitioner completed ten physical therapy ("PT") sessions. Ex. 25 at 56. At the first session she complained of left shoulder pain for about one year. *Id.* at 61. She exhibited normal strength and rated her pain as two-to-five out of ten. *Id.* at 61-62. Her pain improved, and at the last session on October 26th her pain was rated as between zero and one out of ten. *Id.* at 57. In the midst of her PT, Petitioner returned to Dr. Brown with complaints of shoulder pain in mid-October. Ex. 8 at 2-4. She stated her range of motion was improving, but she still experienced pain. *Id.* at 2. A steroid injection was administered. *Id.* at 4.

On November 10, 2021, Petitioner saw Dr. Brown for a follow-up. Ex. 25 at 52-53. Dr. Brown noted that Petitioner had "gotten [] 95% better than she was at the last visit" and was doing "much better at this time." *Id.* The record states Petitioner's left shoulder impingement was "resolved". *Id.* at 53. No other treatment evidence has been filed in this matter.

### B. Affidavit Evidence

In an affidavit dated June 8, 2023, Petitioner stated that her left shoulder had improved, but she still was experiencing pain that interfered with her daily activities. Ex. 11 at 2. A second affidavit dated February 13, 2024, reiterates that Petitioner's shoulder continues to cause her pain. Ex. 12 at 1-2.

## III. Fact Findings and Ruling on Entitlement

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a

whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

In particular, a petitioner must establish that she suffered an injury meeting the Table criteria (*i.e.* a Table injury), in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. If a petitioner establishes a Table injury the burden shifts to respondent to establish a more likely alternative cause. Section 13(a)(1)(A), 11(c)(1)(C)(i), 14(a). If a petitioner cannot establish a Table injury, or she may pursue causation-in-fact under the legal standard set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F. 3d 1274, 1278 (Fed. Cir. 2005).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an HPV vaccine. 42 C.F.R. § 100.3(a)(XVI)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

In addition to causation, a petitioner must also meet the requirements establishing that the vaccine received is "covered" by the Program, the duration and severity of petitioner's injury, and the lack of other award or settlement.[3] With regard to

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or

severity, a petitioner must show that she suffered the residual effects or complications of her injury or condition for more than six months after the administration of the vaccine. § 11(c)(1)(D)(i); *see Song v. Sec'y of Health & Hum. Servs.,* 31 Fed. Cl. 61, 65-66 (1994), aff'd, 41 F.3d 1520 (Fed. Cir. 2014) (noting that a petitioner must demonstrate the six-month severity requirement by a preponderance of the evidence). Finding that petitioner has met the severity requirement cannot be based on petitioner's word alone, though a special master need not base their finding solely on medical records. Section 13(a)(1); *see Colon v. Sec'y of Health & Hum. Servs.*, 156 Fed. Cl. 534, 541 (2021). Severity must be established regardless of whether the claim arises under the Table or is a causation-in-fact claim.

### A. Petitioner Meets the Severity Requirement

The parties dispute whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i). Because Petitioner received the flu vaccine on October 7, 2020, ad described immediate pain as of that date, she must demonstrate residual effects of her alleged SIRVA through April 7, 2021. *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record herein establishes that Petitioner's initial treatment occurred over approximately two months, or until December 16, 2020. At that time, Petitioner was improving but still complained of shoulder pain. There are no subsequent medical records for more than eight months (or until September 1, 2021) when Petitioner next sought shoulder-related care. Petitioner alleges that she stopped seeking care because "the family insurance deductible had been met" "[a]t the end of 2020[,] and she would have had to pay out of pocket for any orthopedic services at the start of the new calendar year." Pet. Mem. at 2.

While this record is sparse, a finding of severity can be made in Petitioner's favor. There is no dispute that closer-in-time to vaccination, Petitioner sought shoulder treatment for pain that she associated with her vaccination. While she ceased care for a lengthy period of time, she did not in December 2020 report that her pain and injury had resolved – and when she later reestablished care, she reported ongoing pain that she linked to the vaccination almost a year prior.

---

underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

Additionally, there are no records that Petitioner sought any medical care between December 2020 and September 2021. This case is unlike those wherein a petitioner had medical encounters for unrelated concerns without mentioned shoulder pain. And Petitioner has offered a reasonable explanation for ceasing care (financial concerns).

The overall record thus constitutes a sufficient showing of severity to meet the evidentiary standard. Petitioner's lack of treatment during this eight-month period is relevant to damages, but does not defeat her claim.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her right shoulder that would explain her symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain three weeks after her October 7, 2020 vaccination that began as of the time of vaccination. Ex. 3 at 7-8. Thereafter, she consistently linked her shoulder pain to the flu vaccine. *See, e.g.,* Ex. 8 at 7.

#### 3. Petitioner's Pain was Limited to her Vaccinated Shoulder

The record also establishes that Petitioner's pain was limited to her left shoulder. The reported symptoms, diagnostic evidence, and treatment were all limited to her left shoulder. *See, e.g.*, Ex. 3 at 7-8. (reporting left shoulder pain on November 8, 2019); Ex. Ex. 8 at 8 (describing left shoulder pain and restrictions following the flu vaccination).

Respondent argues that Petitioner experienced pain outside her shoulder, citing the October 30, 2020, record wherein she reported pain that involved her entire shoulder

and occasionally radiated into her back and neck. Resp. at 10. The mere existence of such record complaints does not defeat a showing that Petitioner not only did experience shoulder-specific pain, but that most of her complaints and treatment efforts were aimed at that. Additionally, the majority of treatment records consistently demonstrate Petitioner's pain was limited to her shoulder. Further, aside from the October 30, 2020 record, there is no reference to pain outside Petitioner's left shoulder. Accordingly, preponderant evidence supports this Table element as well.

#### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

That record shows that Petitioner received a flu vaccine intramuscularly on October 7, 2020, in the United States. Ex. 6 at 2, *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 11 at 2; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she meets the severity requirements of the Vaccine Act, and that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## IV. Damages

Petitioner is seeking $100,000.00 for past pain and suffering, as well as $10,000.00 for future pain and suffering. Pet. Mem. at 5-6. Respondent argues a lump sum of $25,000.00 is appropriate here. Resp. at 13-19.

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his

awareness of his injury. Therefore, I analyze principally the injury's severity and duration.

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A. Past Pain and Suffering

The record establishes that Ms. Pourhassani's SIRVA involved moderate initial pain, with reports to treaters of immediate symptoms within one month of vaccination. She showed swift improvement however, and as of December 16, 2020 reported that she was "at least 50% better". Ex. 8 at 9-10.

Petitioner subsequently did not treat for over eight months, supporting the conclusion that her pain and symptoms were not severe. When she did return (treating for a month between September and October 2021), her pain was at most moderate but quickly improved. Compare Ex. 25 at 61-62 (record from initial physical therapy describing her pain as between two and five out of ten) and Ex. 25 at 57 (record from last physical therapy session describing pain as zero and one out of ten). At her final treatment appointment on November 10, 2021, Petitioner was described as 95% better, and her impingement was listed as resolved. *Id.* at 53.

Overall, then, Petitioner's treatment occurred over approximately thirteen months (with an intervening eight-month gap), and featured ten PT sessions plus one cortisone injection. This case did not involve or require surgery - a factor I have repeatedly stressed bears on whether a six-figure pain and suffering award is warranted. *See, e.g.*, *Cote v. Sec'y of Health & Hum. Servs.*, No. 21-0307V, 2025 WL 2828789, at *6 (Fed. Cl. Sept. 2, 2025).

Petitioner contends that her injury merits a higher-than median award for pain and suffering. Mot. at 5-6. However, she has failed – and despite due opportunity in briefing this matter - to identify comparable cases that awarded the requested $100,000.00 for similar injuries or courses of treatment. *See generally* Pet. Mem. at 5-6. Petitioner only offered case law on general considerations about how pain and suffering should be calculated, but not a single case in which a claimant whose treatment was similar to the Petitioner's herein received an award comparable to what has been demanded. (It is in fact likely that no such decisions exist.)

Such reference to comparable decisions is routinely offered by Program claimants when attempting to substantiate a pain and suffering award, and is very helpful in deciding what sum is proper. It is also recognized to be a legitimate factor special masters may take into account when deciding what pain and suffering sum should be awarded. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."); *Hiatt v. Sec'y of Health & Hum. Servs.*, No. 23-1560V, 2025 WL 1542314, at *9 (Fed. Cl. May 13, 2025) (noting that determining the proper amount of pain and suffering damages to award was made difficult because neither Petitioner nor Respondent cited to any comparable cases to support their proposed figures). All that remains is a naked assertion that the requested sum is proper.

Respondent, by contrast, has better substantiated his counter-proposal. *See generally* Resp. at 15-19. Respondent noted that Petitioner experienced a relatively quick recovery, with a very limited clinical course that included only two prescriptions (Mobic and Voltaren gel), no imaging, ten sessions of PT, and a single steroid injection, nearly all of which occurred only after a lengthy treatment gap. *Id.* at 15-16. He also cites several cases with comparable injuries and courses of treatment that awarded between $25,000.00 and $35,000.00 for pain and suffering. Resp. at 17-19.[4]

Based on the medical records, I conclude that Ms. Pourhassani suffered a mild SIRVA for approximately thirteen months (interrupted by an eight-month gap in treatment). She sought medical care for her shoulder soon after vaccination, but then for financial reasons lived with discomfort for a considerable period of time, unlike claimants whose injuries were demonstrated to be more severe. When she did return to care, her pain was described as moderate (two-to-five out of ten), but it quickly improved by October 2021. Ex. 25 at 57. Further, Petitioner's treatment was conservative overall, with a small number of PT sessions, administration of only one cortisone shot, and no surgical procedures.

---

[4] Respondent cites to three relevant cases: *Valdez v. Sec'y of Health & Hum. Servs.,* No. 21-394V, 2023 WL 1526536, at *1-2, (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (awarding $35,000.00 for pain and suffering where petitioner had more extensive medication, range of motions deficits, and a shorter gap in treatment); *Hiatt,* 2025 WL 1542314, at *9 (awarding $25,000.00 for pain and suffering where petitioner delayed four months before seeking treatment, treated for eight months, and underwent eight physical therapy sessions with a single steroid injection); and *Turnquest v. Sec'y of Health & Hum. Servs.*, No. 21-0065V, 2024 WL 3665961, at *1 (Fed. Cl. Spec. Mstr. July 2, 2024) (awarding $30,000.00 in pain and suffering to a petitioner who underwent less than one year of limited shoulder treatment that included three orthopedic visits, one X-ray, and one MRI after surgery was proposed but did not occur).

The overall severity of the injury at issue herein is thus not *nearly* high enough to warrant the $100,000.00 requested by Petitioner. While non-surgery SIRVA cases can merit awards approaching that level, a far more serious amount of personal pain and suffering must be demonstrated, with reference to medical record proof corroborated by witness statements and other evidence. *See, e.g.*, *Parsons v. Sec'y of Health & Hum. Servs.*, No. 19-1150V, 2023 WL 9060490 (Fed. Cl. Spec. Mstr. Nov. 30, 2023) (awarding $90,000.00 in pain and suffering; petitioner's documented shoulder pain had persisted for five years, impacted his work as a veterinarian, and effected his ability to maintain a family farm); *Balch v. Sec'y of Health & Hum. Servs.*, No. 20-0872V, 2023 WL 150783 (Fed. Cl. Spec. Mstr. Jan. 10, 2023) ($77,000.00 in pain and suffering, given petitioner still experienced limited ROM over two years post-vaccination); *Boyd v. Sec'y of Health & Hum. Servs.*, No. 19-1107V, 2021 WL 4165160 (Fed. Cl. Spec. Mstr. Aug. 12, 2021) ($80,000.00 in pain and suffering where petitioner completed 19 physical therapy sessions and her pain persisted for two and a half years). As noted, Petitioner has not made the showing necessary to justify the requested award, and I do not independently find the record supports it either.

I instead agree with Respondent that this case is more comparable to decisions in which the sum awarded was well below median amounts for a SIRVA. Resp. at 7-9. One matter is particularly on point. *Hiatt v. Sec’y of Health & Hum. Servs.*, No. 23-1560V, 2025 WL 1542314, at *10 (Fed. Cl. Spec. Mstr. May 13, 2025). The *Hiatt* petitioner’s treatment was “very limited[,]” included eight PT sessions, a single steroid injection, and an initial four-month delay in seeking treatment. *Id.* It was also noted that “[t]reatment gaps are a relevant consideration in determining the degree of petitioner’s pain and suffering[.]” *Id.* (*citing Shelton v. Sec’y of Health & Hum. Servs.*, No. 19-279, 2021 WL 2550093, at *7 (Fed. Cl. Spec. Mstr. May 21, 2021)).

Balancing the severity of Petitioner’s SIRVA injury, the course of treatment, and based on the record as a whole, I find that **$25,000.00** for actual pain and suffering is reasonable and appropriate in this case.

B. Future Pain and Suffering

I do not include any component of damages for future pain and suffering. Such an award is appropriate only in cases where the claimant preponderantly shows such a component is reasonable – such as where she has suffered a permanent disability (as corroborated by medical record evidence), or “other extenuating circumstances that justify inclusion of a future component.” *Accetta v. Sec’y of Health & Hum. Servs.*, No. 17-1731V, 2021 WL 1718202, at *5 (Fed. Cl. Spec. Mstr. Mar. 31, 2021). Special masters have declined to award a future pain and suffering component in the absence of indicia of that

level of ongoing severity. *See,* e.g., *Reed v. Sec'y of Health & Hum. Servs.,* No. 16-1670V, 2019 WL 1222925, at *17 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (noting there should be "adequate medical evidence demonstrating the likelihood that petitioner's shoulder injury, more likely than not, will extend well into the future and . . . indicating that [a] shoulder injury is permanent").

Petitioner has not established that the sequela of her SIRVA continued beyond November 10, 2021 sufficient to justify a future pain and suffering component. Certainly she so *alleges* – but Program determinations are not based solely on witness statements. *Clavio v. Sec'y of Health & Hum. Servs.*, No. 17 1179V, 2020 WL 1672956, at *7 (Fed. Cl. Spec. Mstr. Mar. 11, 2020) (finding that this Court "cannot make a finding of fact based on witness testimony alone; the testimony must have some form of corroborating evidence"). Rather, they must have some evidentiary corroboration – which is lacking here, where no treatment evidence has been filed for any time since the fall of 2021 (nearly *five years ago*). In addition (and as is often emphasized in Program damages determinations), lingering SIRVA symptoms are not the same as permanent deficits, even if the claimant subjectively reports ongoing issues. Without objective medical proof documenting or corroborating these kind of statements, a future pain and suffering award is not warranted.

In fact, the record in this case does not support the conclusion that Petitioner's pain and suffering rose to that level. Notably, Petitioner reported her shoulder was "95% better" as of November 10, 2021, and her treating physician considered her shoulder impingement resolved. Ex. 25 at 53. Petitioner's contention that she continues to suffer, and will continue to suffer, for the entirety of her life is based solely on her affidavits and counsel argument, but lacks any support in the medical records. These statements do not equate to ongoing and permanent deficits sufficient to justify future pain and suffering award.

## Conclusion

For the reasons discussed above, and based on consideration of the record as a whole, I find Petitioner is entitled to compensation. Further, I award Petitioner a lump sum payment of $25,000.00 for actual/past pain and suffering, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.

This amount represents compensation for all items of damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.